IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ENDEAVOR MESHTECH, INC.,           )
                                   )
            Plaintiff,             )
                                   )
      v.                           )        C.A. No. 13-1618-GMS
                                   )
ACLARA TECHNOLOGIES LLC,           )
                                   )
            Defendant.             )
                                   )

## MEMORANDUM OPINION

## I.    INTRODUCTION

On September 27, 2013, the plaintiff Endeavor MeshTech, Inc. ("Endeavor") initiated the

instant action against Aclara Technologies LLC ("Aclara"). (D.I. 1.) Endeavor alleges

infringement of U.S. Patent No. 7,379,981 ("the '981 Patent"). (*Id.*) Presently before the court

is Aclara's Motion to Transfer this action to the Eastern District of Missouri, pursuant to 28

U.S.C. § 1404(a). (D.I. 10.) For the reasons that follow, the court will grant Aclara's Motion to

Transfer.

## II.   BACKGROUND

Endeavor is incorporated under the laws of Delaware. (D.I. 1, ¶ 2.) At the time the

complaint was filed, Endeavor's principal place of business was located in Half Moon Bay,

California (*Id.*), although Endeavor's briefing addressing the instant motion identified its current

principal place of business as New York, New York. (D.I. 18, Ex. C.) Endeavor is the owner of

the '981 Patent. (D.I. 1, ¶ 2.) Aclara is a limited liability company organized under the laws of

Ohio, with its principal place of business in Hazelwood, Missouri. (*Id.* ¶ 3.)

## III. STANDARD OF REVIEW

Under 28 U.S.C. § 1404(a), a district court has "broad discretion to determine, on an individualized, case-by-case basis, whether the convenience and fairness considerations weigh in favor of transfer."[1] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). The court engages in a two-step inquiry. First, the court must determine whether the action could have originally been brought in the proposed transferee forum. *Memory Integrity, LLC v. Intel Corp.*, No. 13-1804-GMS, 2015 WL 632026, at *2 (D. Del. Feb. 13, 2015). If, yes, the court proceeds to the second step and asks whether transfer would "best serve the interests of justice and convenience." *Id.* (quoting *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 724 (D. Del. 2012)). It is the defendant's responsibility to demonstrate that transfer is appropriate at each step. *Jumara*, 55 F.3d at 879-80. Guiding the court's analysis is the general principle that, "unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail." *Memory Integrity*, 2015 WL 632026, at *2 (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).

## IV. DISCUSSION

### A. Propriety of the Transferee Forum

The court may only transfer an action to a "district or division where it might have been brought." 28 U.S.C. § 1404(a). The parties do not dispute that Endeavor's lawsuit could have originally been filed in the Eastern District of Missouri. As such, the court proceeds to the second step in order to analyze the relevant interests at stake.

---

[1] The statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

## B. *Jumara* Analysis

The court must consider whether transfer to the Eastern District of Missouri would serve the interests of convenience and justice. In the Third Circuit, this requires an individualized analysis, considering the various private and public interests guarded by § 1404(a). *See Jumara*, 55 F.3d at 879. To this end, the court does not apply any "definitive formula" but, instead, considers each of these "*Jumara* factors" on a case-by-case basis. *See id.* The private interests may include:

> plaintiff's forum preference as maintained in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* The public interests may include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80. The court addresses each of these "*Jumara* factors" in turn.

### 1. Private Interest Factors

#### a. Plaintiff's Forum Preference

The first private interest factor is the "plaintiff's forum preference as manifested in the original choice." *Jumara*, 55 F.3d at 879. Ordinarily, "a plaintiff's choice of a proper forum is a paramount consideration . . . and should not be lightly disturbed." *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). This general rule, however, does not always apply. In

particular, the court will afford "something less than maximum deference" to the plaintiff's chosen forum where the plaintiff is not truly at home in the forum state. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011). Moreover, while a company's situs of incorporation or organization will often correspond to its "home turf," *see Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 759 (D. Del. 2012), there is no bright-line rule. *See In re Link_A_Media*, 662 F.3d at 1224 ("Neither § 1404 nor *Jumara* list a party's state of incorporation as a factor for a venue inquiry. It is certainly not a dispositive fact in the venue transfer analysis . . . ."); *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, No. 12-CV-139 (GMS), 2013 WL 3293611, at *3 (D. Del. June 28, 2013) ("While Audatex is correct that . . . a corporate entity's state of incorporation is part of its 'home turf,' it is not alone dispositive in the analysis."). Thus, the court must engage in a close analysis of the facts of each case, particularly "to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation." *See In re Microsoft Corp*, 630 F.3d 1361, 1364 (Fed. Cir. 2011).

Endeavor is incorporated under Delaware law, although it conducts no business in the state. As a result, Endeavor concedes that its choice of forum should not receive "paramount consideration" but still argues that "heightened" consideration is appropriate. (D.I. 17 at 8–9.) Aclara asserts that Endeavor's decision to incorporate in Delaware was solely driven by litigation strategy, and therefore Endeavor's choice of forum should be entitled to little or no weight. (D.I. 15 at 7–8.) The court does not agree with Aclara's position. In *Microsoft*, the Federal Circuit discounted the plaintiff's choice of forum where the plaintiff incorporated in the forum state sixteen days before filing suit against the defendant. *In re Microsoft Corp*, 630 F.3d 1365. Here, as Aclara recognizes, Endeavor was incorporated "months before initiating its first round of lawsuits based on the '981 patent." (D.I. 15 at 8.) Thus, the inference of

4

gamesmanship is considerably weaker.[2] Moreover, even if plans for future litigation influenced Endeavor's decision to incorporate in Delaware, its choice of forum would still be entitled to more deference than Aclara suggests. *See Ithaca Ventures k.s. v. Nintendo of Am. Inc.*, No. 13-824-GMS, 2014 WL 4829027, at \*2–3 (D. Del. Sept. 25, 2014) (affording plaintiff's forum selection "some degree of heightened deference," even where the court found that plaintiff's "organization [in Delaware] was motivated significantly by the instant litigation"). The court finds that Endeavor's forum preference is entitled to heightened—but not paramount—consideration.

### b. *Defendant's Forum Preference*

The next private interest factor is Aclara's forum preference. *See Jumara*, 55 F.3d at 879. Aclara seeks to litigate in the Eastern District of Missouri, where it has its principle place of business. Endeavor concedes that Aclara has legitimate reasons for preferring the Eastern District of Missouri. Thus, this factor weighs in favor of transfer, although it is of limited magnitude compared to Endeavor's choice of forum. *See Intellectual Ventures*, 842 F. Supp. 2d at 759 ("Under Third Circuit law, [a defendant's] preference for an alternative forum is not given the same weight as [a plaintiff's] preference."); *CNH Am. LLC v. Kinzenbaw*, No. 08-945(GMS), 2009 WL 3737653, at \*2 (D. Del. Nov. 9, 2009) ("While a defendant's preferred venue is a factor that the court considers, it is not sufficient to displace the plaintiff's own choice of venue.").

### c. *Whether the Claims Arose Elsewhere*

The third private interest factor is "whether the claim arose elsewhere." *Jumara*, 55 F.3d at 879. "[A]s a matter of law, a claim for patent infringement arises whenever someone has

---

[2] Aclara also emphasizes that "Endeavor was incorporated only three days before its parent company acquired the '981 patent." (D.I. 15 at 2, 13.) The court does not consider this fact to be meaningfully probative on the question of Endeavor's motivations for incorporating in Delaware.

5

committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis S.A. v. Precision Biosci., Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012) (quoting 35 U.S.C. § 271(a)); *see also Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 730 (D. Del. 2012). Accordingly, where the defendant in a patent infringement action operates on a national level, this factor is often neutral.[3]

The court has recognized, however, that "[t]o some extent, [infringement] claims ar[i]se where the allegedly infringing products [a]re designed and manufactured." *ChriMar Sys., Inc. v. Cisco Sys., Inc.*, No. 11-1050-GMS, 2013 WL 828220, at *5 (D. Del. Mar. 6, 2013) (alterations in original) (quoting *Smart Audio Techs.*, 910 F. Supp. 2d at 730). In other words, this factor may favor transfer to a district where the defendant's accused infringing products originate. Aclara argues that transfer to the Eastern District of Missouri is warranted because the "accused products are marketed from Aclara's Hazelwood, Missouri headquarters." (D.I. 15 at 8.) The court is convinced this factor slightly favors transfer, even though, as Endeavor points out, the accused products are not also designed and manufactured in Hazelwood, Missouri. *See Ithaca Ventures*, 2014 WL 4829027, at *3 ("Even though the products are not designed or manufactured within the District, they are marketed from Washington. . . . The court finds this factor weighs slightly in favor transfer."). Ultimately, the claims have "deeper roots" in the Eastern District of Missouri than in the District of Delaware, where Aclara does not even conduct any sales. *See Verint Sys. Inc. v. CallCopy Inc.*, No. 13-562-GMS, 2013 WL 5338008, at *2 (D. Del. Sept. 23, 2013). As such, this factor weighs slightly toward transfer.

---

[3] In its briefing, Endeavor confusingly argues that this factor is both neutral and that it weighs against transfer. (D.I. 17 at 14–16.)

#### d. Convenience of the Parties

The court must also determine whether the proposed transferee forum would be more convenient for the parties. *See Jumara*, 55 F.3d at 879. In this assessment, the court weighs several considerations, including: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Smart Audio Techs.*, 910 F. Supp. 2d at 730 (internal quotation omitted). Thus, the court is tasked with assessing the "convenience of the parties as indicated by their relative physical and financial condition." *See Jumara*, 55 F.3d at 879.

Endeavor contends that neither District is more convenient than the other, thus making this factor neutral. According to Endeavor, Aclara's physical location is split between Texas and Missouri, thus reducing the convenience to Aclara of litigating in Missouri. But, importantly, Endeavor fails to articulate any convenience achieved by litigating in Delaware. Neither Aclara nor Endeavor is "physically located" in Delaware. *Smart Audio Techs.*, 910 F. Supp. 2d at 730. Therefore, both parties will be forced to travel, and both will be inconvenienced. Endeavor makes no argument that its costs to litigate in Delaware are less than those to litigate in Missouri.

In contrast, the Eastern District of Missouri is certainly more convenient for Aclara. Although it recognized in its complaint that Aclara's principal place of business is in Hazelwood, Missouri, Endeavor attempts to argue that Aclara's additional operations in Texas put Missouri on the same level as Delaware in terms of convenience. (D.I. 17 at 17 ("[P]roceeding in Missouri instead of Delaware will not spare Aclara significant expense given Aclara's split locations . . . .").) The court cannot agree with this fallacious argument. Simply because the

7

Eastern District of Missouri is not the absolute focus of Aclara's business does not mean it is not convenient. *See Ithaca Ventures*, 2014 WL 4829027, at *5 ("The court will not disregard convenience where it can be found, simply because the circumstances are not ideal."). It is unwise and unfair "to subject all parties to an inconvenient forum when a forum exists that would significantly reduce the burden of at least one of the parties. *See id.* at *4 (citing *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009)).

The Eastern District of Missouri is more convenient to the parties than the District of Delaware. Thus, this factor favors transfer.

### e. *Convenience of the Witnesses*

The next *Jumara* factor is "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." 55 F.3d at 879. The parties are not aware of any witnesses that would only be available in one district versus the other. Thus, this factor is neutral.

### f. *Location of Books and Records*

Finally, the court accounts for "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *ChriMar*, 2013 WL 828220, at *6 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). Aclara asserts that documents relating to its accused products are maintained in the Eastern District of Missouri and therefore argues that transfer is appropriate. Endeavor again contends that, because not *everything* is in Hazelwood, this factor does not weigh in favor of transfer. Again, the court disagrees. While modern technology has

8

indeed eased the burden of shipping evidence to distant locations, it nonetheless strikes the court as wasteful to impose unnecessary costs when there is a more efficient alternative. This factor weighs slightly in favor of transfer. *See Ithaca Ventures*, 2014 WL 4829027, at *5 (citing *In re Link_A_Media Devices Corp.*, 662 F.3d at 1224; *In re Nintendo*, 589 F.3d at 1998; *Smart Audio Techs.*, 910 F. Supp. 2d at 732).

## 2. Public Interest Factors

The parties do not dispute three of the public interest factors: enforceability of the judgment, public policies of the forum, and the familiarity of the presiding judge with the applicable law. As such the court excludes these factors from its analysis and considers them neutral.

### a. Practical Considerations

*Jumara* instructs that courts should look to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. Because the practical considerations factor is a "public interest" factor, "at least some attention" must be paid to the *public* costs of litigation. *ChriMar*, 2013 WL 828220, at *7.

Aclara reiterates its same convenience arguments made in the private factor context. Because Aclara fails to address the broader public costs, the court discounts Aclara's argument. Endeavor, in contrast, argues that the numerous co-pending cases in the District of Delaware concerning the '981 Patent counsel against transfer.[4] Endeavor argues that, given the number of lawsuits already filed in Delaware, transferring this case to the Eastern District of Missouri would "(1) serve to unnecessarily risk duplicative and inconsistent claim constructions in

---

[4] At the time of briefing, there were four co-pending cases filed by Endeavor. Since that time, the court has transferred one of the cases out of the District. (C.A. 13-1343-GMS.) Another defendant was dismissed with prejudice by stipulation. (C.A. 13-1627-GMS.) Endeavor has also filed three more recent lawsuits alleging infringement of the '981 Patent. (C.A. 14-1360-GMS; C.A. 14-1361-GMS; C.A. 14-1363-GMS.) Thus, by the court's count, there are five cases implicating the '981 Patent—including Endeavor's action against Aclara—currently pending in the District.

multiple jurisdictions, (2) foster a loss in judicial economy due to the overlapping infringement issues related to [accused technology], and (3) will unfairly place increased financial burden on Endeavor without clear countervailing benefit to Aclara." (D.I. 17 at 10–11.)

Although Endeavor appears to raise legitimate concerns, the court finds that the facts of this case show them to be illusory. First, as Aclara points out, Endeavor's predecessor filed infringement lawsuits covering the '981 Patent in four other districts, prior to Endeavor's lawsuit against Aclara. Endeavor's apparent concern about inconsistent judgment at this stage rings hollow. Second, while a trial judge may develop a familiarity or expertise over a given patented technology over time, this benefit is realized only after the cases have progressed past the preliminary stages. *See Semcon Tech, LLC v. Intel Corp.*, No. 12-531-RGA, 2013 WL 126421, at *7 (D. Del. Jan. 8, 2013) ("I have no knowledge of the patent or the technology . . . . Certainly, if I already had some experience with the patent, it would be an important legitimate concern. Thus, the 'co-pending litigation' weighs against transfer, but not that strongly."). All of the cases involving the '981 Patent are still in their infancies; in fact, none of them yet have a schedule, pursuant to Federal Rule of Civil Procedure 16. Moreover, economies of scale are better achieved where the various accused products are closely related, which, at this stage, the court cannot yet discern. *See In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010) (finding that the "*limited relationship* between this case and [plaintiff's] other pending suit" did not weigh against transfer (emphasis added)).

Endeavor's final concern—its private costs—does not meaningfully alter the court's view. This action has not been consolidated with the co-pending District of Delaware cases, and independent trials will likely be necessary regardless. *GeoTag, Inc. v. Starbucks Corp.*, No. 2:10-CV-572, 2013 WL 890484, at *6 (E.D. Tex. Jan. 14, 2013) ("The Court will not permit the

existence of separately filed cases to sway its transfer analysis. Otherwise, a plaintiff could manipulate venue by serially filing cases within a single district. Allowing a plaintiff to manufacture venue based on this alone would undermine the principals underpinning transfer law and the . . . America Invents Act.").

Because both parties fail to articulate practical considerations that are actually legitimate *in practice*, the court finds this factor weighs minimally against transfer or is neutral.

### b. *Court Congestion*

The court also considers the "relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. While the relative size of the districts' respective caseloads is typically not a sufficient justification for transfer alone, "increased times from filing to disposition and trial are important factors that do influence the court's calculus." *Ithaca Ventures*, 2014 WL 4829027, at *6. According to the Federal Court Management Statistics cited by Aclara, the median time from filing to trial for civil cases in Delaware is 27.6 months, compared 23.5 months for the Eastern District of Missouri. (D.I. 15, Ex. 8.) The median times for all dispositions is 7.6 months for Delaware, compared to 9.4 months for the Eastern District of Missouri. (*Id.*) [5]

The parties disagree as to the inference to be drawn from these statistics, but according to the metrics available to the court, the District of Delaware appears more congested than the Eastern District of Missouri, especially when looking at the most recent figures. The court agrees this factor is speculative because whether a matter will proceed to trial is unpredictable.

---

[5] The court notes that, in the time since the instant motion was filed and briefed, the statistics have been updated. *See Federal Court Management Statistics*, U.S. COURTS (Sept. 2014), http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-june-2014.aspx. The more recent figures put Delaware's time to trial at 31.8 months, versus 24.9 months for the Eastern District of Missouri. The overall disposition times are 9.6 months for Delaware, versus 8.5 months for the Eastern District of Missouri

*See In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). Nonetheless, the court finds that, to the extent it can be relied upon, this factor weighs slightly in favor of transfer.

### c. *Local Interest in the Litigation*

The court must finally examine "any local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879. "A district does not have a local interest in resolving litigation simply by virtue of having one of the parties present there. To hold otherwise would be to give undue weight to the location of the parties, which has already been accounted for in the private interest factors." *Ithaca Ventures*, 2014 WL 4829027, at *7. Patent litigation in particular raises national and even global concerns, thus the notion that a district holds a local interest in the litigation is almost always unpersuasive. *See Helicos Bioscis. Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 375 (D. Del. 2012) ("[T]o characterize patent litigation as 'local' undermines the appearance of neutrality that federal courts were established to provide and flies in the face of the national (if not global) markets that are affected by the outcome of these cases."); *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008) ("[P]atent issues do not give rise to a local controversy or implicate local interests.").

Endeavor's and Aclara's arguments as to why the District of Delaware or the Eastern District of Missouri, respectively, has a greater interest in resolving the dispute are unconvincing and do not overcome the general rule that patent cases do not implicate local interests. Thus, this factor is neutral.

### 3. **Transfer Analysis Summary**

The court finds that Aclara has satisfied its burden of showing that the relevant *Jumara* factors strongly support transfer. Only Endeavor's forum preference weighs against transfer, and, as the court explained above, that preference does not warrant maximum deference in this

case because of Endeavor's minimal connection to the District of Delaware. The remaining factors weigh strongly in favor of transfer or, at least, are neutral. On balance, in the interests of convenience and justice, the court finds that transfer is warranted

## V.    CONCLUSION

For the reasons discussed above, the court will grant Aclara's Motion to Transfer this action to the Eastern District of Missouri, pursuant to 28 U.S.C. § 1404(a). (D.I. 15)

Dated: February 25, 2015

UNITED STATES DISTRICT JUDGE